*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALMAYADAH JOSEPH BENHADI,

Plaintiff-Appellee,

v

MUNASAR YOUSEF ALAFIFI,

Defendant-Appellant.

UNPUBLISHED
December 19, 2024
10:00 AM

No. 366814
Wayne Circuit Court
LC No. 21-109209-DM

Before: O'BRIEN, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right the parties' April 2023 judgment of divorce. In that judgment, the court granted plaintiff sole physical custody, and the parties joint legal custody, of the parties' minor children. The court also divided the marital estate and awarded plaintiff spousal support, child support, and attorney fees. On appeal, defendant does not contest the trial court's custody determinations but takes issue with the division of the marital estate and the awards of support and attorney fees. We affirm.

## I. BACKGROUND

The parties married in Yemen in January 2002. The parties later relocated to Saudi Arabia and had four children. Defendant supported the family through his business, Dulloni, LLC, which was a wholesale clothing business that imported clothes from China and sold them in Saudi Arabia. Defendant traveled often, leaving plaintiff to care for the children.

The family eventually moved to the United States and lived in a home in Melvindale, Michigan. Along with purchasing the marital home, the parties purchased a neighboring property and rented it to third parties. While the family lived in Michigan, defendant continued to travel to Yemen, Saudi Arabia, Turkey, and China for business. He spent a significant amount of time outside the United States, leaving for months at a time. Defendant also formed a business in Michigan to import and sell honey. In March 2020, defendant returned from overseas. In July 2020, the parties separated, but defendant continued to send money to support the family, and plaintiff received additional financial assistance from her family.

-1-

In September 2021, plaintiff filed for divorce, requesting sole legal and physical custody of the children, as well as spousal support and child support. Defendant counterclaimed for joint legal and physical custody of the children, and asked that plaintiff's request for spousal support be denied.

A bench trial was held over several days in September 2022 and October 2022. Evidence was presented concerning the parties' marriage, the parties' assets and debts, and the companies that defendant operated during the marriage. Plaintiff testified about her level of education and abilities, and the financial support she obtained from family members and defendant after the parties' separation. Plaintiff believed that defendant owned properties and businesses overseas. Defendant denied this and testified that he had limited assets and income. According to defendant, his businesses had closed, and he earned money driving for Uber. Defendant testified that he owed money to certain individuals and was responsible for a portion of a substantial debt that his now-closed business, Dulloni, incurred in China. During cross-examination, defendant revealed that he had honey in his possession in Michigan as part of his now-closed honey business, and he explained that he had not sold the honey because he was awaiting approval from the United States Food and Drug Administration (FDA).

In the judgment of divorce, the trial court ordered defendant to pay child support and spousal support. In doing so, the trial court concluded that defendant earned $62,400 each year driving for Uber, and it imputed $41,851.85 in income to defendant for his honey business. For the imputed income, the court reasoned that defendant's honey business was not in fact closed, and that defendant could earn $41,851.85 by selling the honey still in his possession. The trial court awarded plaintiff the marital home, awarded defendant the rental property, and ordered defendant to pay an outstanding property tax debt for the marital home. As for the parties' vehicles, the trial court awarded plaintiff the parties' 2012 Acura MDX and awarded defendant the parties' 2013 Honda Accord. Each party was held responsible for debts in their own name, and the court declined to divvy up the business debt defendant allegedly owed in China, concluding that there was insufficient proof that the debt existed. As for defendant's businesses themselves, the trial court awarded them to defendant, with no interest going to plaintiff. The trial court ordered defendant's bank account funds as of October 31, 2022, to be divided equally between the parties, but permitted plaintiff to keep the funds in her Bank of America account because it only contained what she received as support after the parties' separation. While a Comerica Bank account in plaintiff's name was mentioned in passing during trial, the trial court did not address it in the judgment. Based on evidence at trial that defendant transferred funds to a Robinhood account, the court awarded plaintiff $1,750, representing half of the funds transferred by defendant. As for the parties' interests in real property in foreign countries, the court noted that there was testimony on the subject but found that the evidence was insufficient to award either party interest in those properties. The court added, however, that if plaintiff could establish that, during the marriage, defendant had an ownership interest in a house built on property inherited by defendant in Yemen, plaintiff would be entitled to 50% interest in the house.

Defendant moved the trial court to reconsider portions of this decision or hold a new trial, but the court denied the motion. This appeal followed.

## II. DIVISION OF PROPERTY

On appeal, defendant challenges whether certain property was part of the marital estate and the court's ultimate division of the marital estate. We discern no error in the trial court's rulings.

### A. STANDARD OF REVIEW

As this Court has explained:

> In a divorce case, this Court must first review the trial court's findings of fact regarding the valuations of particular marital assets under the clearly erroneous standard. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. [*Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999) (quotation marks and citation omitted). See also *Richards v Richards*, 310 Mich App 683, 693-694; 874 NW2d 704 (2015).]

### B. ANALYSIS

A judgment of divorce must include "a determination of the property rights of the parties." MCR 3.211(B)(3). When dividing property, trial courts must consider the following factors to the extent that they are relevant to a particular case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

The trial court must consider any relevant factor while refraining from assigning "disproportionate weight" to any single factor. *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008).

"The overarching goal of a trial court's property distribution in a divorce action is equity." *Elahham v Al-Jabban*, 319 Mich App 112, 121; 899 NW2d 768 (2017). It follows that the division of property "need not be equal, but it must be equitable." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). While equality is not the goal, a trial court still must clearly explain "any significant departures from congruence." *Welling*, 233 Mich App at 710. This rule does not preclude "a substantial deviation from numerical equality" so long as such a deviation is

adequately explained and based on "appropriate criteria." *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009).

Equitably distributing the marital estate begins with determining what property is marital property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). Generally speaking, "marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. at 201. All of the marital property together forms the marital estate, which is to be divided between the parties, while each party is entitled to "that party's own separate estate." *Id*. Getting to that point is not always easy, however, because distinguishing between marital and separate property can be difficult:

> While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, there are occasions when property earned or acquired during the marriage may be deemed separate property. For example, an inheritance received by one spouse during the marriage and kept separate from marital property is separate property. Similarly, proceeds received by one spouse in a personal injury lawsuit meant to compensate for pain and suffering, as opposed to lost wages, are generally considered separate property. Moreover, separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property. The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital. [*Id*. at 201-202 (quotation marks and citations omitted).]

Turning to defendant's arguments, he contests the trial court's ruling with respect to the property in Yemen, arguing that it should have been considered separate property.

Plaintiff testified that defendant owned a house in Yemen. According to plaintiff, she saw the house in 2013 when it was under construction, and saw it again in 2014 "when it was completely done" and the parties stayed there with their children for "about a month." Plaintiff confirmed that defendant still owned the house and that it was still in his name, but said "they use a different system in the villages." During cross-examination, plaintiff denied that the house in Yemen was built by defendant's father, who died in 2012, and insisted that defendant was "the one who built it." Plaintiff clarified that defendant inherited the land the house was built on from his father, but not the house itself. There was, according to plaintiff, different property in Yemen that had an "old house" on it, and plaintiff acknowledged that defendant's brothers also inherited real property from defendant's father. But she insisted that the piece of property that defendant built the house on was "part of his shares from the inheritance."

In its ruling, the trial court credited plaintiff's testimony about defendant's inheritance and his construction of the house on the inherited property, and it concluded that, if plaintiff could provide "proof" of defendant's ownership of the house, "then [plaintiff] would be entitled to 50 percent of its appraised value." The court clarified that plaintiff would not be entitled to a 50% interest in the value of "the entire property," only of "the building that was built on there." The court reasoned that the building would be an "improvement" on the land, which would likely entitle plaintiff to some interest therein. This holding was reflected in the judgment of divorce.

Defendant contends that the trial court should have treated the property in Yemen as separate property because it was inherited. We disagree. The trial court, crediting plaintiff's testimony, appropriately distinguished the inherited property (the land) from improvements made to the inherited property (the house defendant built on the land). From there, the trial court appropriately limited the possible award to plaintiff to a portion of the improvements to the property. We discern no error with this reasoning given that the house was built during the parties' marriage, and if defendant used money he earned during the marriage (i.e., marital funds) to build the house, it is likely marital property subject to division. See *Cunningham*, 289 Mich App at 201 (explaining that property derived from the earnings or efforts of the spouse during the marriage is marital property divisible upon divorce). Although plaintiff did not offer proof of ownership or the value of the house in Yemen, she is not necessarily precluded from seeking a sum of money or other assets out of the marital estate representing her equitable share of the house in the future. This is because "[i]f a fraud has been perpetrated on the court by concealment of facts affecting the property rights of [a party]," the court can reopen the property division to effectuate an equitable distribution. *Berg v Berg*, 336 Mich 284, 287-288; 57 NW2d 889 (1953).[1]

Defendant also more generally attacks the trial court's division of the marital estate, arguing that the division was inequitable because it favored plaintiff. While it is true that the trial court's award favored plaintiff, the trial court explained why it believed such an award was equitable under the circumstances. It explained that the parties had been married for 20 years, and that plaintiff married defendant while she was "fairly young"; she was 35 years old at the time of trial. The court also considered plaintiff's contributions to the marriage—she had always been a "stay at home wife," and after the parties had children, she was tasked with caring for the parties' children while defendant traveled for work. The court also took into account plaintiff's earning ability; it explained that plaintiff had never worked and was "very dependent" on defendant for her financial needs, that plaintiff "was not educated" and was pursuing her GED, and that, given plaintiff's age, she could learn "some training and skills" to be able to provide for herself but that would take time. In contrast, the court believed that defendant had "extensive knowledge" about business and had proven himself "quite resourceful" when "finding ways to earn income." The court observed that defendant had shown an ability to not only provide for plaintiff and the children, but also for his "second wife" and mother "overseas." The court also found it "quite interesting" that defendant represented that he earned relatively "little income" but was able to buy the marital home in 2013 for $67,000 and the rental property in 2019 for $100,000 while incurring so little debt that both properties were paid off by the time of trial in 2022. The court more generally found defendant "not very credible," and found defendant's testimony about "his income

---

[1] Defendant cursorily contends that "it was improper for the trial court to treat the home and the land it sits on as two distinct assets," but defendant fails to provide any authority or further explanation to support this assertion. This failure renders the argument abandoned. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016).

Defendant also briefly argues that the trial court's ruling with respect to the Yemen property ran afoul of MCR 3.211(B)(3) because it left the issue unresolved. We disagree because, as we understand the court's ruling, it merely recognized that, if plaintiff could establish that defendant engaged in fraud with respect to the house built in Yemen, then the trial court would equitably divide that asset.

and business" to be especially "concerning." Given these considerations, it is hardly surprising that the trial court determined that plaintiff was entitled to a larger share of the marital estate. As property division need not be equal, *Jansen*, 205 Mich App at 171, and because the trial court adequately explained why it was equitable to award plaintiff a larger share of the marital estate, we discern no error in the trial court's division of property.

Defendant maintains that the division of property was inequitable because the trial court did not explain the disparity in the division of certain assets. While it is true that a trial court must clearly explain *significant* disparities, *Welling*, 233 Mich App at 710, none of the departures from congruence in this case were significant. The largest disparity was in the trial court's award of the marital home and rental property—plaintiff was awarded the marital home valued at $193,000, and defendant was awarded the rental property valued at $180,000. While the property values were clearly not equal, given the value of the homes, the $13,000 difference between them was relatively insignificant. Defendant additionally complains that he was saddled with paying the outstanding property tax for the marital home,[2] but that debt was only $1,165.67. In light of the trial court's lengthy explanation for why plaintiff was entitled to a larger share of the marital estate, the trial court did not err by holding defendant responsible for this relatively minor debt.

Turning to the division of the parties' accounts, defendant contends that it was unfair for the trial court to award plaintiff half of the money in defendant's accounts while leaving plaintiff all of the money in her Bank of America account and ignoring plaintiff's Comerica Bank account. Addressing the Comerica Bank account first, there was no evidence establishing how much money was in that account, if any. The party seeking to include a property for distribution in the property settlement bears the burden of proving the reasonably ascertainable value of the property. See *Magee v Magee*, 218 Mich App 158, 165; 553 NW2d 363 (1996). See also *Wiand v Wiand*, 178 Mich App 137, 149; 443 NW2d 464 (1989) ("The general rule applicable to valuation of marital assets is that the party seeking to include the interest in the marital estate bears the burden of proving a reasonably ascertainable value; if the burden is not met, the interest should not be considered an asset subject to distribution."). Because defendant never established the value of the Comerica Bank account, the trial court did not err by not addressing it.

As for the Bank of America account, while statements for that account were entered into evidence, the record does not establish how much money, if any, was left in the account at the time of trial. For that reason alone, defendant cannot establish error. See *Magee*, 218 Mich App at 165; *Wiand*, 178 Mich App at 149. That inadequacy aside, the trial court reasoned that any money left in the account was plaintiff's separate property because it was given to plaintiff by her brothers and defendant to meet her daily needs while the parties were separated. Defendant argues that any money in the account was necessarily marital property because the money he gave plaintiff was marital property, and when she commingled that money with the money her brothers gave her, all of the money in the account became marital property. It is true that separate property can transform into marital property if the separate property is commingled with marital assets, but that rule only applies if the combined assets are " 'treated by the parties as marital property.' " *Cunningham*, 289 Mich App at 201, quoting *Pickering v Pickering*, 268 Mich App 1, 11; 706 NW2d 835 (2005).

---

[2] Defendant also complains that he was responsible for the tax debt on the rental property, but the record establishes that this debt was paid in full at the time of trial.

Defendant fails to explain how the funds in plaintiff's Bank of America account were treated by the parties as marital property, and it is not apparent why the parties would treat as marital property money given to plaintiff by her brothers to meet plaintiff's basic needs while the parties were separated. Lastly, while the exact amount of money in the Bank of America account is not known, it is uncontested that the amount was nominal—defendant conceded that in his closing brief. The court's decision to allow plaintiff to retain the entirety of the small amount of money in her Bank of America account while ordering defendant to split the amount in his accounts did not render the trial court's division of property inequitable in light of the trial court's lengthy explanation for why plaintiff was entitled to a larger share of the marital estate.[3]

Defendant next takes issue with the trial court's decision to award plaintiff the Acura and him the Honda. According to defendant, the trial court erred because it did not consider the difference in value between the vehicles. Problematically, evidence did not establish the value of either vehicle at the time of trial. The only evidence concerning either vehicle's value was evidence that the Honda was purchased in 2017 for $7,000; the Acura was purchased in 2018 for an unknown amount. Without evidence establishing the respective values of the vehicles at the time of trial, we cannot fault the trial court for failing to make a "finding as to the difference in the values of the vehicle," as defendant requests.

Defendant insists that the award of the vehicles was unfair because the trial court failed to consider how the court's award of the Acura to plaintiff would hinder defendant's ability to generate income driving for Uber. While defendant testified that the Acura gave him "a lot of leverage" driving for Uber, defendant did not testify about, or provide evidence establishing, the difference in his income based on his use of the Acura versus his use of the Honda. Without that evidence, the trial court was left with only vague assertions about how driving the Honda affected defendant's earning ability. That aside, the trial court found that defendant's testimony was not credible in general, and with respect to the Acura in particular, the court believed that defendant took the car away from plaintiff in 2021 "to punish her." From these findings, it can be reasonably inferred that the trial court did not credit defendant's testimony that he could earn more money driving the Acura, and that he instead wanted to retain the Acura to "punish" plaintiff. In contrast,

---

[3] Defendant also complains that the trial court's ruling with respect to defendant's Robinhood account was "inconsistent and lacks finality" because the court allowed plaintiff to seek additional funds from the Robinhood account if plaintiff later discovered and was able to prove that defendant concealed funds in his Robinhood account. At trial, defendant initially denied being familiar with a Robinhood account, then conceded that he transferred $3,500 to a Robinhood account after being presented with a bank record showing that he did. The court awarded plaintiff half of the money defendant transferred to the Robinhood account ($1,750), and said that plaintiff would be entitled to more if it was later determined that defendant concealed additional assets in relation to that account. Similar to the Yemen property, it was not error for the trial court to explain that, if plaintiff could establish that defendant engaged in fraud with respect to the Robinhood account and marital funds were contained in that account, the court may have the ability to equitably divide that asset. See *Berg*, 336 Mich at 287. While the trial court further explained that, if this happened, the court would consider awarding plaintiff all the funds in the account, this was within the range of permissible remedies. See *Sands v Sands*, 192 Mich App 698, 699-705; 482 NW2d 203 (1992); *Sands v Sands*, 442 Mich 30, 36; 497 NW2d 493 (1993).

the trial court credited plaintiff's testimony that the Acura was the safer vehicle, and it awarded plaintiff the vehicle because she was primarily responsible for transporting the children. Giving deference to the trial court's superior ability to assess the credibility of the witnesses that appear before it, see *Welling*, 233 Mich App at 709, we see no error in the trial court's division of the parties' vehicles.

Lastly, defendant takes issue with the trial court's allocation of the parties' debts. Defendant contends that the trial court erred when it "declined to make a ruling on" defendant's significant debt in China that he allegedly incurred while operating Dulloni. The only evidence supporting that debt, however, was defendant's testimony, which the trial court deemed not credible. Defendant contends that the trial court's decision to credit plaintiff's testimony about property in Yemen despite the lack of documentary proof while discrediting defendant's testimony about the debt in China because he failed to provide documentary proof "is arbitrary and lacks any reasoning," but that is simply untrue. Factfinders routinely credit some testimony and discount other testimony, and nothing about that is inherently arbitrary or unreasoned. The trial court did not err by refusing to find that defendant was responsible for a significant debt in China because there was no documentary proof of the debt, and the trial court did not believe defendant's testimony. This Court generally defers to the trial court on matters of credibility, and we see no reason to stray from this general rule here. See *id*.

With respect to defendant's other debts, defendant testified he had almost $8,000 in credit-card debt and owed thousands of dollars more to individuals he borrowed money from. The trial court held that each party was responsible "for any loans, debts and/or credit cards in their respective names and shall hold the other Party harmless from and indemnify them from any liability thereon." While defendant argues that this ruling was inequitable because it saddled him with more debt than plaintiff, there is no evidence to support that the debt defendant is now responsible for was marital debt for which plaintiff agreed to be liable. Accord *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 408; 578 NW2d 267 (1998). Indeed, there is no evidence that plaintiff even knew about these debts before trial. The trial court therefore did not clearly err by finding that these were individual debts that only defendant was liable for.

## III. DEFENDANT'S INCOME

Defendant next argues that the trial court abused its discretion when it imputed income to defendant to determine his support obligations. We disagree.

## A. STANDARD OF REVIEW

A trial court's decision to impute income to a party is reviewed for an abuse of discretion. *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Berger*, 277 Mich App at 723. When determining the appropriate amount of child support, "a trial court must presumptively follow the Michigan Child Support Formula (MCSF)," and whether the trial court "properly reached its determination within the framework of the MCSF" is reviewed de novo. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007).

## B. ANALYSIS

According to the 2021 Michigan Child Support Formula Manual, the first step in determining a child-support award is to ascertain each parent's net income. 2021 MCSF 2. While this is generally determined based on "the actual resources of each parent," MCL 552.519(3)(a)(*vi*), "longstanding Michigan caselaw" allows trial courts to impute income to a parent if "supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income," *Stallworth*, 275 Mich App at 284. Consistent with this longstanding caselaw, the MCSF allows trial courts to include as income "the potential income a parent could earn, subject to that parent's actual ability," 2021 MCSF 2.01(G), and lists factors that courts are to consider when imputing income to a party, see 2021 MCSF 2.01(G)(2).

In the trial court, defendant testified that he earned $1,000 to $1,200 each week driving for Uber. In accordance with this testimony, the trial court determined that defendant earned $62,400 per year driving for Uber. Defendant also testified that he used to run a honey business in Michigan, and though he was no longer operating that business, he had 650 to 700 kilograms of honey still in his possession. He further testified that he paid $10,000 for this honey, and that he would generally sell honey between $300 and $400 per gallon. Based on this testimony, the trial court determined that defendant had 700 kilograms of honey in his possession, and it took judicial notice of the fact that this amounted to 129.63 gallons. The trial court did not credit defendant's testimony that his honey business was no longer operational; it believed that "he is back in the honey business and is capable of earning income through that." The court then determined that, based on defendant's testimony, he could sell the honey in his possession at $400 per gallon for a total of approximately $51,000. The court subtracted from this the amount that defendant paid for the honey, then imputed an income to defendant of $41,851.58 for his honey business. After making these findings, the court noted its belief that defendant likely "derived" additional income "from overseas," but it refused to impute any additional income to defendant because plaintiff was not able to adequately "corroborate her testimony" about defendant's additional overseas income. The court also questioned why defendant "all of a sudden" stopped operating Dulloni considering the business had operated successfully "[f]or nine years," but it did not impute any income for this business despite noting that rekindling the business "might be a possibility for" defendant.

Defendant generally argues that the trial court erred when imputing income to defendant because the court failed to comply with the MCSF by not accounting for certain deductions. With respect to his income from Uber, defendant argues that the trial court erred by failing to consider "defendant's fuel expense" and other possible deductions. But in defendant's closing brief, he explicitly stated that his income from driving for Uber was "$1,200 per week, which is $62,400 per year according to all of the evidence in this case." Defendant cannot argue in the trial court that his income from Uber was $62,400 per year and then, on appeal, fault the trial court for accepting that contention because doing so is akin to harboring error. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 96; 693 NW2d 170 (2005).

Defendant similarly contends that the trial court erred by imputing $41,851.85 in income for defendant's honey business because the court only deducted the cost of the honey, not any operating expenses. The problem with this argument is that no evidence about the operating expenses for defendant's honey business was ever presented in the trial court, so it is unclear how the trial court was supposed to determine what those expenses were and then deduct them. Indeed,

doing so without evidence supporting the same would be "pure speculation," which is impermissible when imputing income. *Ghidotti v Barber*, 459 Mich 189, 199; 586 NW2d 883 (1998). The only evidence concerning expenses incurred by defendant in relation to his honey business was the cost of the honey, which the trial court properly deducted.[4]

For these reasons, we conclude that, based on the record before us, the trial court's decision to impute income to defendant, and the amount of income imputed, was within the range of reasonable and principled outcomes and, therefore, did not constitute an abuse of discretion.

## IV. ATTORNEY FEES

Defendant lastly challenges the trial court's award of attorney fees to plaintiff. We conclude that the trial court did not abuse its discretion by awarding plaintiff attorney fees.

### A. STANDARD OF REVIEW

A trial court's decision to award attorney fees in a divorce action is reviewed for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 699. Findings of fact supporting an award of attorney fees are reviewed for clear error. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction a mistake has been made. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).

### B. ANALYSIS

As relevant to this appeal, MCR 3.206(D)(2)(a) provides:

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay[.]

"This Court has interpreted this rule to require an award of attorney fees in a divorce action only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (quotation marks and citation omitted). When awarding attorney

---

[4] Defendant contends that the trial court erred when imputing income to defendant for his honey business because he did not receive FDA approval to sell the honey in his possession, but the document on which defendant relies for this argument is not part of the lower court record, so we decline to consider it. See *Wiand*, 178 Mich App at 143. Defendant further contends that the trial court "fail[ed] to provide adequate factual support in conjunction with its imputation of income," but as detailed above, the trial court thoroughly outlined the record evidence on which it relied to determine defendant's imputed income.

fees under the MCR 3.206(D)(2)(a), a trial court must consider both whether the party requesting the fees has the ability to pay and whether the party being ordered to pay the fees "has the ability to" do so. *Id*. at 703.

When awarding attorney fees in this case, the trial court specifically found that plaintiff did not have the ability to pay while defendant did. On appeal, defendant contends that the trial court erred by finding that plaintiff did not have the ability to pay, but he fails to adequately explain why. Plaintiff never had a job and was entirely dependent on defendant to provide for her basic needs throughout the course of the parties' marriage. After the parties separated, plaintiff had to rely on a combination of financial assistance from defendant and her brothers. Defendant argues that the trial court should have treated the financial assistance plaintiff received from her brothers as income, but even accepting this assertion as true, it is not apparent how that establishes that plaintiff had the ability to pay her attorney fees. Again, plaintiff was wholly dependent on others to meet her basic needs. It follows that the only way she would likely be able to pay her attorney fees would be to dip into the support defendant was ordered to provide, and "[a] party may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Maake v Maake*, 200 Mich App 184, 189; 503 NW2d 664 (1993). On this record, we are not definitely and firmly convinced that the trial court erred by finding that plaintiff did not have the ability to pay her attorney fees.

Turning to defendant, the trial court found that defendant had the ability to pay because defendant's income was sufficient "to buy two homes, free and clear, at almost $200,000," build another home in Yemen, and provide for both his family in the United States as well as a second wife in Yemen. Defendant argues that the trial court's finding was clearly erroneous because it erred by imputing income to defendant, but we disagree with this argument for the reasons explained above. Defendant also emphasizes that there was no evidence that he was underreporting his income, but that is debatable for the reasons explained by the trial court. At any rate, defendant does not dispute that he was able to buy two homes "free and clear, at almost $200,000" while supporting two families, and in light of this evidence, we are not definitely and firmly convinced that the trial court made a mistake by finding that defendant had the ability to pay plaintiff's attorney fees.

Given the foregoing, we conclude that the trial court did not abuse its discretion by awarding plaintiff attorney fees.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Sima G. Patel

-11-