## SANDS v SANDS

Docket Nos. 109990, 111077, 112299, 113249, 113870. Submitted June
12, 1991, at Detroit. Decided February 3, 1992, at 9:05 A.M.
Leave to appeal sought.

Judy Sands was granted a divorce from Gerald F. Sands in the
Macomb Circuit Court, Robert J. Chrzanowski, J. The marital
assets were divided equally, and the plaintiff was awarded
alimony of $200 a week for fifteen years or until her remar-
riage. The court also ordered Gerald Sands to pay seventy
percent of the plaintiff's attorney fees, after finding that most
of those fees were incurred because of his devious and deceptive
conduct, including attempts to conceal certain assets. He was
found to be in contempt of court several times, and a Septem-
ber 20, 1988, order of criminal contempt was entered. A partial
new trial was granted with regard to two pieces of realty, and
the plaintiff was later awarded temporary alimony of $700 a
week. Gerald Sands appealed from the judgment of divorce and
from several orders, including the orders finding him in con-
tempt. Judy Sands also appealed. The appeals were consoli-
dated.

The Court of Appeals *held:*

1. Gerald Sands was not given proper notice that the con-
tempt proceedings that resulted in the September 20, 1988,
order of criminal contempt were criminal in nature. His convic-
tion cannot be sustained because the proper procedural safe-
guards were not followed. That order and an accompanying
order for the payment of the plaintiff's attorney fees must be
vacated.

2. The trial court's decision to create an equal division of the
marital assets was proper. The court abused its discretion,
however, in not taking punitive action in light of Gerald Sands'
persistent attempts to conceal assets and thus it was inappro-
priate to award him any share of the assets he attempted to
conceal. On remand, the court must determine which assets
Gerald Sands attempted to conceal, award full ownership of

REFERENCES

Am Jur 2d, Divorce and Separation §§ 915, 929, 940.
See the Index to Annotations under Concealment; Divorce and
Separation; Equitable Distribution; Property.

those assets or their equivalent to the plaintiff, and split the remaining assets equally.

Affirmed in part, reversed in part, and remanded.

DIVORCE — MARITAL ASSETS — INTENTIONAL CONCEALMENT OF ASSETS.
A spouse who intentionally attempts to conceal assets from the court or the opposing spouse in a divorce action should not be awarded any part of such property in the division of marital assets.

*Chiamp & Wenger, P.C.* (by *Lisa Wenger* and *Carole L. Chiamp*), for the plaintiff.

*Acevedo & Baggott* (by *Nancy L. Baggott*), and *Jerald R. Lovell,* for the defendant.

Before: JANSEN, P.J., and SULLIVAN and WEAVER, JJ.

WEAVER, J. After twenty-six years of marriage, Judy Sands filed for divorce from Gerald Sands. Following a lengthy trial, plaintiff was granted a divorce. The trial court split the marital assets equally and awarded plaintiff alimony of $200 a week for fifteen years or until her remarriage. The court ordered defendant to pay seventy percent of the plaintiff's attorney fees, on the basis of its finding that the bulk of plaintiff's attorney fees were incurred because of "defendant's devious and deceptive conduct."

One example of misconduct on the part of Gerald Sands can be seen in his attempt to conceal certain assets resulting from the sale of a bowling alley in California. Mr. Sands and his brother-in-law, John Yasment, owned a corporation called Southern California Leisure Time (SCLT). The corporation's main asset was a twenty-five percent interest in a California bowling alley. The bowling alley was sold on August 12, 1986, and SCLT received $240,000 of the proceeds. Mr. Sands as-

serted that he and Yasment were equal partners in SCLT and that each received $120,000 from the sale.

On November 7, 1986, a hearing was held with regard to an order to show cause. Eugene Nowak, an attorney who had represented Mr. Sands in various matters and had prepared several documents concerning SCLT beginning in 1980, received a pretrial order in the present action ordering him to turn those documents over to plaintiff. When Nowak examined the file, he found that several of the documents were missing. Nowak assumed that Mr. Sands had removed the papers from the file, including one that showed Mr. Sands owned 97.5 percent of SCLT. Mr. Sands eventually admitted taking the documents, stating that the papers "weren't important."

On February 20, 1987, Mr. Sands was held in contempt on the bases of what had transpired at this hearing and the court's finding that Mr. Sands had removed documents from his attorney's file. At that time, Mr. Sands was ordered to pay $6,000 in fees and costs for plaintiff's retention of California counsel.

At a March 30, 1987, show cause hearing, Mr. Sands stated that he owned fifty percent of SCLT when it was incorporated in 1981. Mr. Sands conceded that there was a document, signed by him and Yasment in February 1983, that transferred to him all but twenty-five shares of stock (which effectively amounted to complete ownership of the company, with Yasment retaining only voting shares). However, Mr. Sands contended that the agreement "was signed but not executed. That corporation has never changed shares since day one till the time it closed down." The documents in question show that the exchange of shares was

in satisfaction of a $32,250 debt Yasment owed Sands.

At trial, on October 7, 1987, Mr. Sands again contended that the transfer of shares was never executed. However, on December 20, 1983, Mr. Sands had sent a letter to his accounting firm instructing them that the stock ownership of SCLT was changed on February 12, 1983. The letter stated that Yasment owned seventy-five percent of the voting stock, while Sands owned twenty-five percent of the voting and one hundred percent of the common stock.

Yasment and Sands each received a check for $120,000 from the proceeds of the sale. Eight days later, on January 9, 1987, Yasment sent Sands a check for $120,000. Sands deposited the money into a bank account in his name. The money was then transferred to an account belonging to Sands' father, in trust for Gerald Sands.

On the fourth day of trial, October 9, 1987, John Yasment was called as a witness by defendant. Mr. Yasment testified that beginning in February 1983, Mr. Sands was the sole owner of SCLT, while he retained only some voting shares. Yasment then testified that before the sale of the bowling alley, he and Mr. Sands had a verbal contract that if Yasment could sell the bowling alley, he would receive fifty percent of the gross proceeds received by SCLT. Yasment stated that he received $120,000 for his role in selling the bowling alley, which he deposited into his personal checking account. Yasment explained that he wrote a check to Mr. Sands for $120,000 so that it could be reinvested. However, as stated above, the money was merely held in trust for Mr. Sands.

In an attempt to reconcile this widely divergent, inconsistent testimony, on the eighth day of trial, November 6, 1987, Mr. Sands testified: "I never

transferred the stocks over at any given time. I had an exercise, I had an option to exercise. That was my choice to do. I could have did it. I didn't do it. So in John Yasment's mind, yes, I owned it all. In my own mind, I didn't do nothing with it. That was my option. That's what an option is for, as I understand it."

Ultimately, the trial court found that Mr. Sands was in fact the sole owner of SCLT's common shares and that the $120,000 being held in trust by Mr. Sands' father was owned by Mr. Sands.

After the close of trial, defendant was held in contempt four times, and a partial new trial was granted with regard to two pieces of realty. When defendant filed this appeal, plaintiff was granted a temporary award of alimony giving her $700 a week.

Both parties now appeal. We reverse in part, affirm in part, and remand with instructions.

## DEFENDANT'S ISSUES

Defendant has entered before this Court a total of thirty assignments of error, consuming over 130 pages of argument. We find merit in one and accordingly reverse only the September 20, 1988, order of criminal contempt.

Defendant complains that he was not given notice that the contempt proceedings were criminal in nature until the sentence was imposed. We agree that the pleadings did not make it clear that defendant was about to participate in a criminal contempt hearing. The confusion was increased at trial when plaintiff's attorney called Mr. Sands to testify under the adverse-party rule, which should not have been possible during a criminal contempt proceeding. See *Jaikins v Jaikins,* 12 Mich App 115; 162 NW2d 325 (1968). Defendant was entitled

to be informed of the nature of the offense with which he was charged. *People v Johns,* 384 Mich 325, 331; 183 NW2d 216 (1971). Because the record does not show compliance with the proper procedural safeguards, the conviction of criminal contempt cannot be sustained. *Id.* at 333. Because we vacate this order of contempt, we also strike the accompanying order for the payment of $900 of the plaintiff's attorney fees.

As noted, this is the only meritorious argument that emerges from defendant's voluminous brief.

### PLAINTIFF'S ISSUES

Plaintiff raised five issues on appeal.

We find merit in only one and accordingly remand for partial redivision of the marital assets.

Mrs. Sands complains that the decision to split the marital property equally is inequitable. A trial court's decision dividing the parties' property in a divorce action is a dispositional ruling. We review it de novo but will not reverse it unless convinced we would have reached a different result in the trial court's place. *Beason v Beason,* 435 Mich 791; 460 NW2d 207 (1990); *Burkey v Burkey (On Rehearing),* 189 Mich App 72; 471 NW2d 631 (1991). In this case, we will not disturb the court's determination to create an equal split of the marital assets, with one exception.

In the December 1989 Final Report of the Michigan Supreme Court Task Force on Gender Issues in the Courts, an area of concern was hidden assets in divorce cases. The task force found that "[i]n many cases, a non-earning spouse has little knowledge of what property the parties own, or its value, and has a difficult burden in discovering the nature and extent of the marital estate." *Id.* at 67-68.

The case before us is a prime example of the burden one spouse's reprehensible behavior can impose upon not only the wronged spouse but also the court system. Under the circumstances revealed by the extensive record presented to us, we find it an abuse of discretion for the trial court not to have taken some sort of punitive action in light of Mr. Sands' persistent attempts to conceal assets. In its recommendations regarding property divisions in divorce actions, the task force suggested:

> Both parties should be required to disclose all assets in the early stages of a divorce action. Failure to disclose assets should result in the imposition of meaningful sanctions such as default, an award of actual attorney fees and costs or contempt. If undisclosed assets are later discovered, there should be a rebuttable presumption that they were deliberately concealed, resulting in the award of 100% of such assets to the injured party unless the presumption is overcome by the non-disclosing party. [*Id.* at 70-71.]

This is in accord with the maxim that one who seeks the aid of equity must come in with clean hands. *Stachnik v Winkel,* 394 Mich 375, 382-384; 230 NW2d 529 (1975). The doctrine of "clean hands" rests on the proposition that the court will not be the abettor of inequity. *Id.* at 382. Thus, we find it inappropriate for the court to award Mr. Sands any share of assets that he attempted to conceal. Once a spouse intentionally has misled the court or the opposing spouse regarding the existence of an asset, that spouse should be estopped from receiving any part of that property.

Accordingly, we remand for the court to make a determination of which assets Mr. Sands had at-

tempted to conceal.[1] We direct the court to award full ownership of these particular assets or their equivalent value to Mrs. Sands before making an equal split of the remaining assets. This course of action should have the salutary effect not only of adjusting the equities in this case but also of serving as a warning to all divorcing parties.

We are reluctant to impose such a burden on the trial court, whose exemplary patience and efficiency deserves a better reward, but we feel it is necessary in this case.

We reverse the September 20, 1988, judgment of contempt and related attorney fees and remand for a partial redistribution of marital assets in accordance with this opinion.

We affirm in all other respects.

[1] Because of the extensive record established below, we feel that an additional hearing should not be necessary to allow the court to make this determination, but that is, of course, a matter within the court's discretion.