# STATE OF MICHIGAN

# COURT OF APPEALS

AUDRA MICHELLE SANTORO,

        Plaintiff-Appellee,

v

VITO AURELIO SANTORO,

        Defendant-Appellant.

UNPUBLISHED
March 28, 2017

No. 332553
Leelanau Circuit Court
LC No. 15-009445-DM

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right a judgment of divorce. On appeal, defendant challenges the trial court's award of sole legal custody of the parties' children to plaintiff, as well as two provisions relating to attorney fees and the disposition of any concealed assets. We affirm the award of legal custody to plaintiff, vacate both of the challenged provisions contained in the divorce judgment, and remand for amendment of the judgment.

Defendant argues that the trial court erred in awarding plaintiff sole legal custody of the parties' children. As explained in *Kubicki v Sharpe*, 306 Mich App 525, 538; 858 NW2d 57 (2014):

> Three different standards govern our review of a circuit court's decision in a child-custody dispute. We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error. [Citation omitted.]

When reviewing custody decisions, an abuse of discretion "is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Rains v Rains,* 301 Mich App 313, 324; 836 NW2d 709 (2013) (citations and quotations marks omitted). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Phillips v Jordan*, 241 Mich App 17, 20, 614 NW2d 183 (2000) (citations omitted). A court's findings are against the great weight of the evidence if "the evidence clearly preponderates in the opposite direction." *Rains*, 301 Mich App at 325 (citation omitted). "Whether an established custodial environment

-1-

exists is a question of fact to which the great weight of the evidence standard applies." *Kubicki*, 306 Mich App at 540 (citation omitted).

Defendant argues that the trial court erred when it ruled that plaintiff was only required to prove by a preponderance of the evidence that an award of sole legal custody to her was in the children's best interests. We disagree.

The trial court previously entered a temporary custody order that awarded the parties joint legal custody of the children. MCL 722.27(1)(c) provides, in part, that "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." In *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010), our Supreme Court explained:

> If the proposed [custody] change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. . . . On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests.

The referee found, and the trial court agreed, that the children had an established custodial environment with plaintiff. Defendant appears to claim that a change from joint legal custody to sole legal custody would necessarily change a child's established custodial environment, thereby requiring proof by clear and convincing evidence that such a change is in the child's best interests. He couples this argument with a claim that divorcing spouses automatically share joint legal custody until divorce. Defendant also maintains that the temporary court order awarding the parties joint custody on an interim basis further required a finding that a custodial environment existed with both parents.

Defendant's argument improperly conflates the labeling or characterization of a "legal custody" order, whether it be sole or joint, with an "established custodial environment." The term "established custodial environment" is statutorily defined as follows:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

"Whether an established custodial environment exists is a question of fact for the trial court to resolve on the basis of statutory criteria." *Hayes v Hayes*, 209 Mich App 385, 387-388; 532 NW2d 190 (1995). And a "trial court's custody order is irrelevant to this analysis." *Id.* at 388. Additionally, in *Berger v Berger*, 277 Mich App 700, 706-707; 747 NW2d 336 (2008), this Court observed:

An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. The existence of a temporary custody order does not preclude a finding that an established custodial environment exists with the noncustodian or that an established custodial environment does not exist with the custodian. A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order. An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort. [Citations omitted.]

Accordingly, defendant's view that, merely because the temporary order provided for joint legal custody there necessarily was a change in the children's established custodial environment with the award of sole legal custody, is misplaced and unsound. The status of joint legal custody, whether existing pursuant to a temporary order or, as claimed by defendant, a default status arising out of any marriage until entry of a divorce judgment or order to the contrary, does not automatically mean that there is a joint established custodial environment. And defendant does not employ the statutory definition of "established custodial environment" to form an argument that such an environment existed with both parties in this case, essentially failing to properly challenge the trial court's determination that the established custodial environment existed solely with plaintiff. Because defendant does not challenge the trial court's underlying factual determination that an established custodial environment existed solely with plaintiff, and plaintiff was not seeking to upset that established custodial environment, defendant has not shown that the trial court erred when it determined that plaintiff was only required to show that a change of legal custody was in the children's best interests by a preponderance of the evidence.

MCL 722.26a(1)(a) provides that a court "shall determine whether joint custody is in the best interest of the child by considering[,]" in part, the best-interest factors set forth in MCL 722.23.[1] On appeal, however, defendant does not challenge any of the trial court's findings concerning these factors. Instead, he questions only the court's finding that sole legal custody with plaintiff was appropriate due to the parties' inability to work together. In addition to the statutory best-interest factors, MCL 722.26a(1)(b) required the trial court to determine "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." The trial court should assess "the general level of

---

[1] MCL 722.26a(7)(b) defines "joint custody" as encompassing, in part, situations in which "parents shall share decision-making authority as to the important decisions affecting the welfare of the child[,]" i.e., legal custody. See *Dailey v Kloenhamer*, 291 Mich App 660, 670; 811 NW2d 501 (2011) (custody described in MCL 722.26a[7][b] "is referred to as joint legal custody").

cooperation and agreement between the parties." *Wellman v Wellman*, 203 Mich App 277, 281; 512 NW2d 68 (1994). In *Wright v Wright*, 279 Mich App 291, 299-300; 761 NW2d 443 (2008), this Court, examining a request for joint custody, stated:

> [T]he record reflects a deep-seated animosity between the parties and an irreconcilable divergence in their opinions about how to foster each child's well-being. This antagonism even affected their ability to make civil parenting exchanges. Therefore, joint custody was not an option, because the record reflected that the parties would not "be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b).

In the instant case, the major points of contention with the parties involved the 2015-2016 school choice and the decision whether the children should attend counseling. The evidence also showed disagreements or problems concerning the children's extracurricular activities, which appeared to stem largely from the parties' inability to communicate with each other in a timely and effective manner, as well as defendant's reluctance to spend as much money as plaintiff would prefer. Further, there was a disagreement regarding orthodontic work. The parties also had some difficulty in making civil parenting exchanges at plaintiff's home. The evidence, particularly the parties' e-mail exchanges, clearly reflected that the parties presently have a contentious relationship. Given the parties' obvious animosity, which is also evident from their accusations and disagreements over property and financial matters throughout the proceedings, their disagreements concerning the children's schooling, counseling, and dental care, and their inability to agree on fostering the children's participation in important extra-curricular activities, the evidence does not clearly preponderate against the trial court's determination that the parties were unable to agree and cooperate concerning important decisions affecting the children's welfare. In addition, while defendant notes that in at least one case, *Shulick v Richards*, 273 Mich App 320, 326-327; 729 NW2d 533 (2006), a change to joint legal custody was found to be appropriate where both parties testified that their communications had improved such that they could work together for the best interests of the children and wanted to do so, the parties here are not at that point. Should the parties become able to communicate more effectively without their present difficulties, defendant can petition for a legal custody change at that time. For present purposes, we find no error in the trial court's decision to award sole legal custody of the children to plaintiff.

Defendant next argues that the trial court erred by including language in the judgment of divorce that was not part of the parties' settlement agreement involving the division of property. The two provisions at issue are as follows:

> IT IS FURTHER ORDERED that the parties shall perform their respective executory obligations as specified in this Judgment of Divorce, with due diligence, in a timely fashion, and with the utmost good faith. In the event that either party wrongfully fails to fulfill such obligations as imposed by this Judgment of Divorce, thus necessitating the institution of enforcement proceedings, then the party who is determined to be in default, as determined by the presiding Judge, shall then pay the court costs and reasonable attorney fees actually incurred by the non-defaulting party in such post-judgment enforcement

proceedings, subject to this Court's right to reduce such claim for fees and costs in the event the fees and costs incurred are disproportionately large compared to the materiality and relief eventually afforded to the prevailing party.

IT IS FURTHER ORDERED that any assets and/or property which was concealed, which value was misrepresented, or which is the subject of a fraudulent representation by one party, shall be awarded to the opposing party who was misled by such concealment or misrepresentation. In the event that one of the parties has not disclosed all of the assets and debts of the marriage, or he or she has deliberately understated the value of assets or overstated the amount due on debts then, in that event, and under the authority of *Sands v Sands*, 192 Mich App 698; 482 NW2d 203 (1992), aff'd 442 Mich 30; 497 NW2d 493 (1993), the undisclosed asset, or that part of the undisclosed asset shall be awarded in its entirety to the party who was unaware of the asset or the interest in that asset and, if this Court finds that the true amount owed on debt was not disclosed in its entirety, then the understated amount of the debt shall be paid by the party who failed to disclose the true amount owed on the debt to the party who assumed the debt under this Judgment, or until further Order of this Court.

We shall refer to the first paragraph as the "attorney-fee provision" and to the second paragraph as the "fraudulent-forfeiture provision." With respect to the attorney-fee provision, in Michigan, "attorney fees are not recoverable . . . unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). A settlement agreement is a contract and is governed by the legal principles applicable to contracts. *Eaton Co Rd Comm'rs v Schultz*, 205 Mich App 371, 379; 521 NW2d 847 (1994). However, once again, the attorney-fee provision was not part of the parties' settlement agreement. The attorney-fee provision is essentially a contempt provision comparable but not identical to MCR 3.206(C)(2)(b), which allows a party to request attorney fees and expenses in a domestic relations action on the basis that "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply." The decision to award attorney fees under the court rule is discretionary. *Reed*, 265 Mich App at 164; *Stackhouse v Stackhouse*, 193 Mich App 437; 445; 484 NW2d 723 (1992) (trial court has the discretion to award attorney fees incurred as a result of a party's unreasonable conduct during the litigation).

Here, the language in the attorney-fee provision does not completely parallel the language in the court rule, undermining the trial court's authority to include the provision, and the attorney-fee provision effectively mandates all future judges in the case to award attorney fees and expenses when the triggering language is implicated, depriving a later court of discretion in deciding whether to award fees and expenses. We therefore conclude that the attorney-fee provision is not proper to include in the judgment of divorce; if judgment-compliance issues arise in the future, the court rule and the law of contempt will provide an adequate and appropriate remedy for either party to pursue. We do not believe that the attorney-fee provision would be problematic had the parties stipulated to its inclusion, as it would be contractual in that scenario.

With respect to the fraudulent-forfeiture provision, its language would allow, for example, plaintiff or defendant to go into court 20 or 30 years from now and engage in litigation over an asset that was purportedly undisclosed at the time of divorce, effectively re-litigating a portion of the property settlement and division. MCR 3.211(B)(3) provides that a divorce judgment "must include . . . a determination of the property rights of the parties[.]" "Compliance with MCR 3.211(B)(3) ensures that divorce cases are not tried piecemeal subjecting the parties to a multiplicity of orders . . . ." *Yeo v Yeo*, 214 Mich App 598, 601; 543 NW2d 62 (1995). And well-settled public policy favors the finality of judgments. *King v McPherson Hosp*, 290 Mich App 299, 304-305; 810 NW2d 594 (2010). To be clear, we are not suggesting that there is no avenue for relief when a divorce judgment or settlement is procured by fraud and misrepresentations. MCR 2.612(C)(1)(c) and (3), addressing relief from judgment, provide a mechanism to challenge fraudulently-procured judgments. Indeed, this Court in *Nederlander v Nederlander*, 205 Mich App 123, 126; 517 NW2d 768 (1994), stated:

> [T]he Supreme Court [has] held that there is no independent cause of action to recover damages for a fraudulently induced settlement because the court rules provide effective remedies and deterrents. The Court decided that the balanced approach given in MCR 2.612(C) to competing public policy considerations concerning the recognition of fraud suits and the finality of judgments would be upset if the plaintiff was allowed to file a claim of fraud. [Citations omitted.]

The fraudulent-forfeiture provision, in essence, improperly allows a future fraud claim or action to recover money or property *unconfined* by the court rules.

Finally, in *Sands v Sands*, 442 Mich 30, 36; 497 NW2d 493 (1993), our Supreme Court rejected this Court's apparent adoption of "an automatic rule of forfeiture for future cases involving the concealment of marital assets." The *Sands* Court observed that "a judge's role is to achieve equity" and that "[a]n attempt to conceal assets does not give rise to an automatic forfeiture." *Id.* at 36-37. The fraudulent-forfeiture provision is a rule of automatic forfeiture, binding all future judges who might be called upon to apply the provision, depriving them of the discretionary and equitable authority recognized in *Sands*. In fact, the fraudulent-forfeiture provision expressly states that it is based on the authority of this Court's ruling in *Sands*, but that aspect of *Sands*, i.e., the automatic forfeiture discussion, was subsequently rejected on appeal to the Supreme Court as indicated above. In sum, the fraudulent-forfeiture provision cannot stand.

Affirmed with respect to the award of legal custody to plaintiff, vacated as to both of the challenged provisions contained in the divorce judgment, and remanded for amendment of the divorce judgment consistent with our ruling. We do not retain jurisdiction. Neither party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause

-6-