*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL URIEL WELLS,

      Plaintiff-Appellant/Cross-Appellee,

v

ANNE PATRICIA MCCARTHY-WELLS,

      Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
July 31, 2025
10:32 AM

No. 368917
Lenawee Circuit Court
LC No. 2020-047358-DO

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiff-appellant/cross-appellee (plaintiff), Michael Uriel Wells, appeals as of right from a November 15, 2023 judgment of divorce, which divided the marital estate. The judgment also awarded spousal support to defendant-appellee/cross-appellant (defendant), Anne Patricia McCarthy-Wells, and reflected the parties were responsible for paying their own attorney fees. Defendant cross-appeals from the judgment of divorce. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

This appeal stems from the parties' acrimonious divorce, which resulted in a lengthy trial court proceeding. In December 1990, the parties married. In 2002, defendant was declared disabled by the Social Security Administration. She received Social Security disability benefits, which were retroactive to January 2, 2000. Plaintiff, who had worked in law enforcement and as a firefighter, retired in 2012. In 2015, the parties purchased 25 acres of property, which neighbored their marital home. They invested a significant amount of money into creating a winery business on the land; and the winery's property was encumbered by a mortgage in their names.

On February 14, 2020, plaintiff filed for divorce, requesting the trial court equitably divide the marital estate. Defendant requested the same relief, along with spousal support. Discovery, and extensive motion practice, ensued. The parties obtained personal protection orders (PPOs) against each other in relation to an event that occurred in the marital home in June 2020. The trial court granted defendant exclusive use of the marital home. The trial court also ordered: "The

-1-

parties shall maintain the financial status quo. Each bill shall be paid by the person who paid it prior to February 14, 2020, from the same account it was paid prior to February 14, 2020."

After several delays, trial commenced on May 11, 2021. Defendant was proceeding *in propria persona*, alleging she lacked the funds to retain counsel because plaintiff controlled the parties' finances and prevented her from obtaining a loan. At that time, plaintiff was not paying spousal support. After trial was held over several days, and plaintiff's testimony was complete, the trial court granted a lengthy adjournment because defendant obtained counsel. The trial court reopened discovery, and motion practice again ensued. An order requiring plaintiff to pay temporary spousal support was entered, and it was challenged by plaintiff.

Trial resumed in February 2023. The parties testified about the marital debts, which were substantial, and their respective income streams, which were limited. Despite only paying $9,600 in spousal support and being in arrears, plaintiff testified he paid the marital bills throughout the lengthy proceedings. He also testified defendant failed to comply with court orders and improperly removed funds from the winery's bank account. The parties agreed plaintiff should pay spousal support to defendant in the future, but they disputed the amount. The parties also agreed the marital property should be sold. On November 15, 2023, the trial court entered the judgment of divorce, which (1) appointed a receiver; (2) ordered the parties' property to be sold to pay marital debts, and any proceeds be divided equally between the parties; (3) divided plaintiff's pensions equally between the parties; and (4) required plaintiff to pay $425 in monthly spousal support to defendant, until plaintiff reached 67 years of age.[1] These appeals followed.

## II. PLAINTIFF'S ARGUMENTS ON DIRECT APPEAL

Plaintiff raises various challenges to the trial court's division of the marital estate. We address them in turn.

## A. STANDARDS OF REVIEW

In a divorce action,

> this Court must first review the trial court's findings of fact regarding the valuations of particular marital assets under the clearly erroneous standard. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. [*Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999) (quotation marks and citations omitted).]

---

[1] At the time of trial, plaintiff was 63 years old, and defendant was 62 years old.

Likewise, when reviewing spousal-support awards, this Court's first task is to determine whether the trial court's factual findings were clearly erroneous. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id.* Again, the fact-finder is best suited to consider a witness's credibility and demeanor, and "an appellate court should not conduct an independent review of credibility determinations[.]" *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113, 130; 793 NW2d 533 (2010).

B. ANALYSIS

The purpose of a divorce judgment is to fix the property rights and interests of the parties. *Westgate v Westgate*, 291 Mich 18, 28; 288 NW 860 (1939). "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). "A division of property in a divorce action need not be equal, but it must be equitable." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994).

When dividing property,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

"The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008) (quotation marks and citation omitted). "While each spouse need not receive a mathematically equal share, any significant departures from congruence must be explained clearly by the court." *Welling*, 233 Mich App at 710. "[T]here is no Michigan statute or caselaw that precludes outright a substantial deviation from numerical equality in a property distribution award." *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009).

In reaching an equitable division, the trial court must first determine what property is considered marital property and what property is considered separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010).

> Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between

-3-

the parties in a manner that is equitable in light of all the circumstances. As a general principle, when the marital estate is divided each party takes away from the marriage that party's own separate estate with no invasion by the other party. [*Id*. at 201 (quotation marks and citations omitted).]

Yet, a spouse's separate estate can be invaded for redistribution when the statutory exceptions under either MCL 552.23(1) or MCL 552.401 have been met. *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997). MCL 552.23(1) authorizes a court to invade separate assets if, after the division of marital assets, one party demonstrates additional need. *Id*. at 494. MCL 552.401 authorizes a trial court to invade one spouse's separate property when the other spouse "contributed to the acquisition, improvement, or accumulation of the property." See *id*. at 494-495 (quotation marks and citation omitted).

Plaintiff first challenges the trial court's decision relating to his pensions. There is no dispute that plaintiff received a pension from working in a police department from 1978 to 1982 as well as a pension for working as a Ypsilanti firefighter from 1987 to 2012. Nor is there any dispute that "pension benefits are assets to be considered part of the marital estate subject to distribution in the discretion of the circuit court." *Boonstra v Boonstra*, 209 Mich App 558, 563; 531 NW2d 777 (1995).

Concerning plaintiff's retirement assets, the judgment of divorce stated:

> Plaintiff and defendant shall equally divide Plaintiff's City of Ypsilanti Retirement benefits and Plaintiff's police pension. Plaintiff is currently in "pay status" and has been since prior to the filing of the Complaint for Divorce. . . . The marital portion shall be determined to be the date of the marriage (12/08/1990) through the date of the filing of the Complaint for Divorce (02/14/2020). The effective date of division shall be December 15, 2021 meaning Defendant shall be entitled to her portion of the retirement benefit paid to Plaintiff from December 15, 2021 going forward. . . . Plaintiff shall pay Defendant directly the past due amount of $69,024 through August 15, 2023 and then directly each month the amount of $2,157 per month until the division date. . . .

Therefore, the trial court held plaintiff's police pension and firefighter pension would be divided equally between the parties. Plaintiff argues this holding was erroneous because (1) his entire police pension was earned before the marriage; (2) a portion of the firefighter pension was earned before the marriage; and (3) to the extent that trial court intended to invade plaintiff's separate assets under either MCL 552.23(1), or MCL 552.401, the trial court failed to explain why it was appropriate to do so.

Plaintiff is correct, and it appears the trial court acknowledged at least a portion of the pensions were plaintiff's separate property. Indeed, in a March 23, 2023 opinion and order, the trial court held: "The *marital portion* of the parties' pension and retirement accounts shall be divided equally using the date of marriage through the date of filing of the Complaint as the division date." (Emphasis added.) A July 20, 2023 order contains identical language. Yet, in the November 2023 judgment of divorce, the trial court held defendant is entitled to premarital portions of the pensions.

It appears this unequivocal language was mistakenly included in the judgment of divorce, however. Indeed, in a different portion of the judgment of divorce, the trial court essentially acknowledged at least a portion of the pensions were plaintiff's separate property. Specifically, the trial court ordered: "The *marital portion* shall be determined to be the date of the marriage (12/08/1990) through the date of the filing of the Complaint for Divorce (02/14/2020)." (Emphasis added.) The trial court's calculations concerning the monthly payments are consistent with the monthly amount distributed from the marital portion of plaintiff's firefighter pension. Based on this, defendant argues the individuals in charge of preparing the Qualified Domestic Relations Order (QDRO) will rely on the trial court's directive and only include the marital portion of the firefighter pension for purposes of division. As a result, defendant argues the trial court need not revisit this issue on remand. Although defendant's argument appears to be supported by the QDRO entered by the trial court, a portion of the judgment of divorce holds that defendant is entitled to 50% of the entire police pension and firefighter pension. This is erroneous and the trial court's holdings are inconsistent. Accordingly, we vacate the portion of the judgment of divorce relating to plaintiff's pensions and remand for further consideration addressing the issue.

Next, concerning the trial court's retroactive award to defendant relating to plaintiff's firefighter pension, plaintiff argues the trial court abused its discretion by failing to consider defendant was essentially already awarded a portion of the firefighter pension because, under the August 25, 2020 status quo order, plaintiff was ordered to pay the household bills during the pendency of the divorce proceedings. According to plaintiff, the property award and the status quo order, taken together, constitute an impermissible "double dip" that results in an inequitable outcome. In so arguing, plaintiff notes he paid a $9,100 lump sum spousal support payment.

"Double dipping—or tapping the same dollars twice—refers to situations where a business or professional practice is valued by capitalizing its income, some or all of which is also treated as income for spousal support purposes." *Loutts*, 298 Mich App at 26-27 (quotation marks and citation omitted). In *Loutts*, this Court addressed a double-dipping argument in the context of a spousal support award. *Id*. at 25-31. This Court noted it "previously addressed double-dipping in the context of pensions," and explained such issues were resolved on a case-by-case basis. *Id*. at 28-29. The *Loutts* Court went on to explain the trial court improperly "determined that the value of a business may be used for the purpose of *either* property distribution *or* spousal support, but not both." *Id*. at 31. Such a determination was erroneous because it resulted in "applying a bright-line test and failing to consider the specific facts and circumstances of th[e] case." *Id*. This Court remanded the case and directed the trial court to "redetermine spousal support . . . , including whether the equities . . . warrant utilizing the value of [the business] for purposes of both property division and spousal support." *Id*. Based on the holding in *Loutts*, there is no bright-line rule for whether the value of a pension, or retirement account, can be used in determining property distribution and awarding spousal support. See *id*. at 25-31. Instead, trial courts must consider what is equitable, i.e., what is just and reasonable under the circumstances. See *id*.

We conclude the trial court did not engage in an inequitable "double-dip" by entering the status quo order, and later ordering plaintiff's firefighter pension be divided between the parties. The status quo order stated, in relevant part: "The parties shall maintain the financial status quo. Each bill shall be paid by the person who paid it prior to February 14, 2020, from the same account it was paid prior to February 14, 2020." The status quo order did not require plaintiff to pay defendant a portion of the firefighter pension. Rather, because plaintiff handled the finances and

-5-

bills during the parties' marriage, plaintiff was responsible for paying the marital bills during the proceedings. Notably, defendant complained that plaintiff refused to give her information about the parties' finances and wielded financial control over her during the marriage and divorce proceedings.

As noted by the trial court, it is unclear what source of income, or from which funds, plaintiff paid the marital bills. Moreover, plaintiff did not present evidence at trial to support he used funds from the firefighter pension to pay them. Plaintiff had at least one other source of income: the parties' winery. Although plaintiff testified the winery consistently operated at a loss, plaintiff was able to employ three people, who earned $15 per hour. In 2020, plaintiff admitted he claimed more than $16,000 in income from the winery. The trial court found: "It appears that the winery business produced some actual income despite showing losses on its tax returns which included a significant noncash expense related to depreciation." Given these facts, plaintiff's reliance on *Loutts* is misplaced. Plaintiff is not entitled to the relief he seeks, i.e., reversal and remand with instructions "to offset the retroactive pension award and spousal support arrearages to reflect the funds [plaintiff] paid under the status quo order."

Next, plaintiff argues the trial court failed to consider defendant's conduct during the proceedings when dividing the marital estate. Although Michigan's no-fault divorce law does not require a showing of fault to obtain a divorce, fault is a relevant consideration when dividing the marital estate. *McDougal v McDougal*, 451 Mich 80, 88-91; 545 NW2d 357 (1996). Although misconduct related to assets does not require automatic forfeiture of those assets, attempts to conceal assets, or uncooperative behavior during discovery, can be considered when dividing assets and can support a deviation from an equal split. *Draggoo v Draggoo*, 223 Mich App 415, 430; 566 NW2d 642 (1997).

To support the claim that defendant's conduct should have resulted in defendant receiving less property, plaintiff relies on the holding in *Sands v Sands*, 192 Mich App 698, 699-705; 482 NW2d 203 (1992), aff'd 442 Mich 30; 497 NW2d 493 (1993). In that case, the trial court split the marital estate equally between the parties despite the husband hiding assets and the trial court holding him in contempt four times during the proceedings. *Id*. at 699-702. This Court stated: "[W]e find it an abuse of discretion for the trial court not to have taken some sort of punitive action in light of [the husband's] persistent attempts to conceal assets." *Id*. at 704. Citing the maxim "one who seeks the aid of equity must come in with clean hands," this Court remanded with instructions for the trial court to determine which assets the husband attempted to conceal and to award those assets to the wife before splitting the remainder of the property equally. *Id*. at 704-705. Our Supreme Court affirmed this holding, but made it clear this rule of forfeiture is not automatic. *Sands*, 442 Mich at 36. Rather, it is simply one way to achieve an overall "equitable division on the basis of the facts proven in each individual case." *Id*.

Unlike the husband in *Sands*, defendant did not attempt to conceal assets. Rather, the record supports defendant (1) failed to comply with the trial court's orders at times; (2) delayed trial because of illness and lack of trial counsel in 2021; and (3) damaged marital property. In fact, contempt proceedings were initiated against defendant because of her failure to comply with the trial court's orders. Nonetheless, this is not a case where defendant engaged in an "attempt to conceal marital assets both during and after the parties' separation." Cf. *Cassidy v Cassidy*, 318 Mich App 463, 478; 899 NW2d 65 (2017). While defendant admittedly removed funds from the

winery's bank account, defendant stated she did so to pay for necessities of daily living, such as food. Notably, as already discussed, defendant accused plaintiff of concealing, and lying about, the parties' assets.

Importantly, in denying defendant's request for attorney fees under MCR 3.206(D)(2), the trial court concluded: "[A]n award of attorney's fees is inappropriate as both parties' litigious nature contributed to the fees accrued in this matter." The trial court also commented at an October 17, 2022 hearing: "I don't think particularly that either party has very clean hands in this case. . . . I think that both sides have done things to complicate this case and make it drag on farther than [necessary] . . . ." While these findings were not made in relation to an argument raised by plaintiff concerning attorney fees, or sanctions, these findings are relevant to his argument. Indeed, as stated in *Sands*, 192 Mich App at 704-705, "one who seeks the aid of equity must come in with clean hands." Plaintiff in this case did not do so. Defendant repeatedly alleged plaintiff largely controlled the parties' finances. Plaintiff admittedly removed funds from the winery's bank account and placed them in a separate account, to which only he had access. Plaintiff did so despite acknowledging defendant had a right to those funds. Additionally, defendant alleged plaintiff abused her throughout the marriage and the divorce proceedings. The trial court awarded both parties personal protection orders in relation to an incident where plaintiff entered the marital home after they separated. And, aside from one lump-sum payment of $9,600, plaintiff did not pay spousal support during the proceedings. As a result, contempt proceedings against plaintiff were initiated. Plaintiff also unilaterally put the marital home mortgage in forbearance during the proceedings, resulting in defendant being unable to obtain a home-equity loan to obtain counsel in 2021. After this was discovered, and plaintiff was questioned about how he spent the mortgage funds, plaintiff testified he used the funds to pay off a joint credit card.

While plaintiff argues the proceedings "spanned 40 months almost entirely because of [defendant's] wrongful conduct and attempts to delay the proceedings," this is unsupported. The case was filed shortly before the COVID-19 pandemic, which plaintiff's third attorney acknowledged contributed to the delays. Additionally, the parties engaged in mediation, and both parties changed legal counsel during the proceedings. Plaintiff's 2022 surgery resulted in the December 8, 2022 trial being adjourned. It cannot be said the delays are entirely attributable to defendant or that plaintiff's behavior was impeccable.

In sum, although defendant's conduct was far from perfect during the proceedings, "fault is an element in the search for an *equitable* division—it is not a punitive basis for an inequitable division." *McDougal*, 451 Mich at 90. "Marital misconduct is only one factor among many and should not be dispositive. Instead, fault should be considered in conjunction with all the other relevant factors." *Cassidy*, 318 Mich App at 478 (quotation marks and citations omitted). Again, "the judge's role is to achieve equity, not to 'punish' one of the parties." *Sands*, 442 Mich at 36.

In this case, the trial court was clearly aware of defendant's misconduct and nonetheless decided to give that evidence minimal weight. The trial court considered a number of other factors, including the parties' disparate earning abilities, ability to work, life statuses, necessities, and circumstances. See *Sparks*, 440 Mich at 159-160 (outlining factors to consider when dividing property). It is clear the trial court took great pains to equitably distribute the marital estate. Aside from the trial court awarding defendant premarital portions of the pensions, which appears to have

been a mistake,[2] the division of the marital estate was fair and equitable on the facts of this case. The trial court did not abuse its discretion by failing to award defendant less property on the basis of her conduct during the divorce proceedings.[3]

### III. DEFENDANT'S ARGUMENTS ON CROSS-APPEAL

Defendant argues the trial court abused its discretion by failing to award her permanent spousal support. We disagree.

### A. STANDARDS OF REVIEW

We review a trial court's award of spousal support for an abuse of discretion. *Loutts*, 298 Mich App at 25.

> The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case. We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [*Id*. at 25-26 (quotation marks and citations omitted).]

### B. ANALYSIS

"A trial court has discretion to award spousal support under MCL 552.23," *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010); and MCL 552.28 authorizes the modification of periodic spousal support awards, *Staple v Staple*, 241 Mich App 562, 565; 616

---

[2] Plaintiff states the trial court's error concerning the pensions "adds up to $2,847.24 per year."

[3] To the extent plaintiff argues the trial court abused its discretion by failing to use its inherent authority to sanction defendant for her conduct during the proceedings, including by awarding plaintiff attorney fees, this argument is unpreserved. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-294; 14 NW3d 472 (2023). And, even if we disregarded this preservation requirement, plaintiff would not be entitled to relief because the trial court determined that neither party had "clean hands in this case" and that both had engaged in actions to "complicate" and "drag" the proceedings on further than necessary[.]" See and compare *Maldonado v Ford Motor Co*, 476 Mich 372, 389; 719 NW2d 809 (2006) (quotation marks and citations omitted) (recognizing that a trial court's inherent authority "is a creature of the clean hands doctrine" and "rooted in a court's fundamental interest in protecting its own integrity and that of the judicial process").

NW2d 219 (2000).[4] "Spousal support does not follow a strict formula. Indeed, . . . there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support. . . ." *Loutts*, 298 Mich App at 30 (quotation marks and citation omitted; second alteration in original).

> Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington v Shokoohi*, 288 Mich App 352, 356; 792 NW2d 63 (2010).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Loutts*, 298 Mich App at 32 (quotation marks and citation omitted). "The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case." *Woodington*, 288 Mich App at 356. Although property awards may be taken into account when determining spousal support, one party should not be required to dissipate a property award to support himself or herself. *Hanaway v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995). "The voluntary reduction of income may be considered in determining the proper amount of alimony. If a court finds that a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award." *Cassidy*, 318 Mich App at 475 (alteration, quotation marks, and citations omitted).

---

[4] Although MCL 552.28 "unambiguously provides that parties to a divorce may petition the trial court for modification of alimony, our decisions also recognize that divorcing spouses can, in some circumstances, structure an alimony agreement that will not be subject to future modification." *Staple*, 241 Mich App at 565. "If the alimony is either a lump sum or a definite sum to be paid in installments, the alimony provision is classified as alimony in gross. . . . [A]limony in gross is considered nonmodifiable and exempt from modification under MCL 552.28[], though the recipient spouse dies or remarries before all the payments are made." *Id*. at 566. "However, if the installment payments are subject to any contingency, such as death or remarriage of a spouse, . . . the payments are more in the nature of maintenance payments, and therefore periodic alimony subject to modification." *Id*. An award of periodic spousal support "may be modified upon petition of the receiving party showing new facts or changed circumstances." *Richards v Richards*, 310 Mich App 683, 692; 874 NW2d 704 (2015). Absent the parties' express intent to make spousal support nonmodifiable, they maintain their right under MCL 552.28 "to seek modification of alimony." *Staple*, 241 Mich App at 568.

In February 2020, plaintiff filed his complaint for divorce. Initially, plaintiff was not ordered to pay temporary spousal support. Instead, the trial court entered an order requiring the parties to maintain the status quo during the divorce proceedings. This order resulted in plaintiff, who had control of the parties' finances, being required to pay a majority of the parties' bills. On November 8, 2021, the Friend of the Court (FOC) issued a recommended order, which required plaintiff to pay $1,595 in temporary, monthly spousal support. The trial court entered the proposed order; and, on December 15, 2021, plaintiff objected. The parties agreed the amount calculated by FOC was erroneous, and it was agreed the trial court would address the issue at trial. At the time of the February 2023 trial, plaintiff had only paid $9,600 toward spousal support.

On March 23, 2023, the trial court entered an opinion and order, which outlined its findings of fact and conclusions of law after the bench trial. The trial court considered the spousal-support factors and made detailed findings of fact and observations, including: (1) the parties had a "long-term marriage"; (2) defendant was unable to work because of her long-term disabilities; (3) defendant received monthly Social Security disability benefits; and (4) plaintiff had the ability to work in the future, likely earning minimum wage. The trial court also acknowledged it had already awarded defendant a portion of plaintiff's firefighter pension. The trial court further recognized that the parties were "close to a traditional retirement age," and would likely face financial difficulties in the future "due to the financial damage related to the end of the marriage and loss of the winery." The trial court then held:

> Based on the length of the marriage, the discrepancy in incomes, [defendant's] long-standing disability, and the impact of the divorce on both parties, the Court finds that an award of long-term spousal support paid to defendant is appropriate. Her needs moving forward will be significantly greater than those of [plaintiff] due to her disability and she has a lesser ability to meet those needs given her limited and fixed income. Further, [plaintiff] providing for the financial support of [defendant] is not new, as it was the state of affairs throughout most of the parties' marriage. However, after division of [plaintiff's] pension, the parties will be far closer in income, and indeed it appears that [defendant] would have greater income than [plaintiff] if he does not obtain further employment. Since it does appear that [plaintiff] is employable at least in a minimum wage job, it is appropriate to include this earning capacity for purposes of determining spousal support. Given the circumstances, the award of spousal support should generally strive to somewhat equalize the parties' incomes. Consequently, Ms. Wells [sic] shall pay spousal support to [defendant] in the amount of $425.00 per month. Spousal support shall terminate in the month that [plaintiff] reaches full retirement age for purposes of social security.

On April 21, 2023, the trial court entered an order holding spousal support would be effective "December 15, 2021, the date [plaintiff] first objected to the spousal support award," and spousal support would be modifiable based on a change in income. On November 15, 2023, the judgment of divorce and a final uniform spousal support order were entered. They required plaintiff to pay defendant $425 in monthly spousal support, effective December 15, 2021. Plaintiff was to pay spousal support until he reached "his full retirement age of 67 unless further modified by the Court. . . ."

On appeal, defendant argues the trial court should have awarded her permanent spousal support. We disagree.

When reviewing spousal support awards, this Court's first task is to determine if the trial court's factual findings were clearly erroneous. See *Loutts*, 298 Mich App at 26. "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id*. The fact-finder is best suited to consider a witness's credibility and demeanor, and "[a]n appellate court should not conduct an independent review of credibility determinations." *Smith*, 487 Mich at 130 n 64. See also *Berger*, 277 Mich App at 705 (holding "[t]his Court will defer to the trial court's credibility determinations").

As noted by the trial court, defendant has health issues and is unable to work. In 2002, defendant was deemed disabled by the Social Security Administration. She began to receive Social Security disability benefits, which were retroactive to January 2, 2000. At the time of trial, defendant received $1,535 per month in Social Security disability benefits. Defendant's testimony supports she required spousal support to pay her expenses. After dividing plaintiff's firefighter pension, the trial court imputed income to plaintiff. The trial court did so in an effort to balance the parties' incomes. However, the trial court held spousal support would terminate after plaintiff turned 67 years of age. In so ordering, the trial court took into consideration plaintiff's age, health, and physical limitations. It then determined that plaintiff was capable of working a minimum wage job. The trial court's findings were not clearly erroneous. Indeed, plaintiff had surgery in November 2022, and he would likely require another surgery in the future. Plaintiff also had other health issues. Plaintiff testified that his prior employment, including work at the winery, was "[m]ore physically labor intensive." He would not be able to do physically intensive work in his current medical condition; and he did not know if his overall ability to work would be hampered by his medical conditions or their associated medications. Plaintiff was hopeful he would be able to work in a nonlabor intensive job in the future.

Nonetheless, defendant essentially argues the trial court did not give adequate weight to the length of the parties' marriage, her health, and the parties' previous standard of living. But, it is clear the trial court considered these factors and also took into consideration plaintiff's ability to pay given his age and circumstances. In doing so, the trial court balanced defendant's needs and the amount of property already awarded to her. The trial court further considered the tenth factor, i.e., "the parties' prior standard of living," see *Woodington*, 288 Mich App at 356, and found the parties lived comfortably for a majority of the lengthy marriage. Yet, the trial court also recognized the parties would both be unable to return to the standard of living they enjoyed for much of the marriage because of their financial issues. Given the parties' debts, and their limited assets, the trial court's ruling was largely based on need. This was a proper focus because "[s]pousal support is to be based on what is just and reasonable under the circumstances of the case." See *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

The trial court's findings of fact were not clearly erroneous and its award of spousal support was just and reasonable under the circumstances. While defendant complains it is likely the parties' incomes will not be equalized after plaintiff is no longer required to pay spousal support because his Social Security retirement benefits will exceed her benefits, it is clear the trial court

balanced the parties' incomes and needs so that neither would be impoverished. See *Loutts*, 298 Mich App at 26. The trial court did not abuse its discretion.[5]

## IV. CONCLUSION

We vacate the portion of the judgment of divorce relating to plaintiff's pensions and remand for further consideration of this issue. We affirm the remainder of the trial court's holdings concerning division of the marital estate and spousal support. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica

---

[5] We note that defendant's argument concerning spousal support is largely based on future events, i.e., plaintiff's income after retirement. If the events transpire, defendant is not without recourse because she can move the trial court to extend spousal support payments. See *Richards*, 310 Mich App at 692.